**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **ARMEN ALEX GRIGORYAN,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **(1) WHEELER COUNTY, a political** | § | |
| **Subdivision of Texas** | § | |
| **(2) TIM REEVES, in his official** | § | **CASE NO. 2:25-CV-276-Z** |
| **capacity,** | § | |
| **(3) FRANKLIN MCDONOUGH,** | § | |
| **in his official capacity,** | § | |
| **(4) DALE COLE,** | § | |
| **(5) LEVI HAVENS, and** | § | |
| **(6) TIMOTHY PYLE,** | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**

---

TO THE HONORABLE MATTHEW J. KACSMARYK, PRESIDING JUDGE:

COME NOW Defendants, WHEELER COUNTY ("Defendant Wheeler County"), TIM REEVES, in his official capacity ("Defendant Reeves"), FRANKLIN MCDONOUGH, in his official capacity ("Defendant McDonough"), DALE COLE ("Defendant Cole"), LEVI HAVENS ("Defendant Havens"), and TIMOTHY PYLE ("Defendant Pyle") (collectively "Defendants"), and file this Motion to Dismiss Plaintiff's Original Petition for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support:

## <u>TABLE OF CONTENTS</u>

<u>TABLE OF CONTENTS</u> ...................................................................................................... ii

<u>TABLE OF AUTHORITIES</u> ............................................................................................... iii

I.      Introduction ............................................................................................................1

II.     Standard of Review................................................................................................2

III.    Argument & Authorities .......................................................................................2

       A.  Defendant Wheeler County, Defendant Reeves, and Defendant McDonough are not liable under § 1983 because there is no existing policy of the County or its Sheriff's Department that was the moving force behind Plaintiff's alleged constitutional violation# ....................................................................................2

       B.  Plaintiff's claims against Defendants should be dismissed based on the doctrines of governmental and qualified immunity. .............................................................7

           1.  Official Capacity Claims ........................................................................7

           2.  Individual Capacity Claims.....................................................................7

       C.  Plaintiff's claims for malicious prosecution should be dismissed because Defendant McDonough is entitled to absolute prosecutorial immunity for actions taken associated with the judicial process...........................................................10

       D.  Plaintiff's claim for malicious prosecution should be dismissed because Defendants Reeves, Pyle, Havens, and Cole's actions were based on probable cause ....................................................................................................................12

IV.    PRAYER .............................................................................................................16

V.     CERTIFICATE OF SERVICE ............................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. State,*
  429 S.W.3d 621 (Tex. Crim. App. 2014) .................................................................9

*Alvarez v. City of Brownsville,*
  904 F.3d 382 (5th Cir. 2018).............................................................................3, 4

*Anderson v. Valdez,*
  845 F.3d 580 (5th Cir. 2016)..................................................................................8

*Armstrong v. Ashley,*
  60 F.5th 262 (5th Cir. 2023) ................................................................................13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...............................................................................................2

*Baker v. Story,*
  621 S.W.2d 639 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.). ..................8

*Baldwin v. Dorsey,*
  964 F.3d 320 (5th Cir. 2020)..................................................................................8

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,*
  520 U.S. 397, 407 (1997).......................................................................................3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007). ..............................................................................................2

*Brown v. Bryan Cty, OK,*
  219 F.3d 450 (5th Cir. 2000)..................................................................................4

*Brown v. Callahan,*
  623 F.3d 249 (5th Cir. 2010)..................................................................................8

*Browning-Ferris Indus. v. Lieck,*
  881 S.W.2d 288 (Tex. 1994)............................................................................14, 16

*Buckley v. Fitzsimmons,*
  509 U.S. 259 (1993). ............................................................................................11

*Burge v. St. Tammany Parish,*
  336 F.3d 363 (5th Cir. 2003)..................................................................................3

*Burns v. Reed*,

    500 U.S. 478 (1991) ....................................................................................11

*Campbell v. City of San Antonio*,

    43 F.3d 973 (5th Cir. 1995)..........................................................................4

*City of Hempstead v. Kmiec,* ...........................................................................

    902 S.W.2d 118 (Tex. App.—Houston [1st Dist.] 1995, no writ).....................7, 9

*City of Lancaster v. Chambers,*

    883 S.W.2d 650 (Tex. 1994)....................................................................7–9

*Clawson v. Wharton Cnty.*,

    941 S.W.2d 267 (Tex. App.—Corpus Christi 1996, pet. denied) .........................11

*Covington v. City of Madisonville, Tex.*,

    812 Fed. Appx. 219 (5th Cir. 2020) ...............................................................6

*Cuba v. Pylant,*

    814 F.3d 701 (5th Cir. 2016)........................................................................14

*Gordy v. Burns,*

    294 F.3d 722 (5th Cir. 2002)........................................................................13

*Hale v. King,*

    642 F.3d 492 (5th Cir. 2011)..........................................................................4

*Hart v. O'Brien,*

    127 F.3d 424 (5th Cir. 1997), *abrogated on other grounds as recognized by Spivey v.*

    *Robertson*, 197 F.3d 772, 775–76 (5th Cir. 1999)). ...........................................12

*Imbler v. Pachtman,*

    424 U.S. 409 (1976) ....................................................................................11

*James v. Harris Cnty.*,

    577 F.3d 612 (5th Cir. 2009)..........................................................................3

*Joseph on behalf of Estate of Joseph v. Bartlett,*

    981 F.3d 319 (5th Cir. 2020)..........................................................................9

*Kalina v. Fletcher,*

    522 U.S. 118 (1997). ..................................................................................11

*Keenan v. Robin,*

    709 S.W.3d 595 (Tex. 2024)....................................................................14, 16

iv

*Kerr v. Lyford*,
    171 F.3d 330 (5th Cir. 1999)..................................................................13

*Kroger Tex., Ltd. P'ship v. Suberu*,
    216 S.W.3d 788 (Tex. 2006)..................................................................14

*Loupe v. O'Bannon*,
    824 F.3d 534 (5th Cir. 2016)..................................................................10

*Mohamed for A.M. v. Irving Indep. Sch. Dist.*,
    300 F. Supp. 3d 857 (N.D. Tex. 2018). ...................................................6

*Monell v. Dept. of Social Servs. of City of N.Y.*,
    436 U.S. 658, 694 (1978)...................................................................2, 3

*Piazza v. Mayne*,
    217 F.3d 239 (5th Cir. 2000)..................................................................14

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001)...............................................................2, 3

*Post v. City of Fort Lauderdale*,
    7 F.2d 1230 (11th Cir. 1992)...................................................................8

*Raymond v. Ector County, Tex.*,
    507 Fed. Appx. 347 (5th Cir. 2013) ........................................................6

*Rehberg v. Paulk*,
    566 U.S. 356 (2012). .....................................................................10, 11

*Sanders v. English*,
    950 F.2d 1152 (5th Cir. 1992)................................................................13

*Tolan v. Cotton*,
    572 U.S. 650 (2014). ..............................................................................8

*Thompson v. Clark*,
    596 U.S. 36 (2022). ...............................................................................13

*Thompson v. Upshur Cnty.*,
    245 F.3d 447 (5th Cir. 2001)...................................................................3

*U.S. v. $34,000 Currency*,
    288 Fed. Appx. 139 (5th Cir. 2008) .......................................................9

*United States v. Reyes,*

    963 F.3d 482 (5th Cir. 2020)................................................................................9

*Wadewitz v. Montgomery,*

    951 S.W.2d 646  (Tex. 1997)................................................................................7

*Winograd v. Clear Lake City Water Auth.,*

    811 S.W.2d 147 (Tex. App.—Houston [1st Dist.] 1991, writ denied).....................7

**Statutes**

42 U.S.C. § 1983..............................................................................................14

**Rules**

FED. R. CIV. P. 12(b)(6).......................................................................................5

**Treatises**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 at 156-59

    (2d ed.)..........................................................................................................8

# I.
## __Introduction__

This case involves a traffic stop and search of Plaintiff's vehicle on I-40, a known drug corridor. Plaintiff was pulled over for failure to have working license plate lights.[1] The officer conducting the stop requested that Plaintiff sit in the front seat of the patrol car while he issued a warning for the violation.[2] Plaintiff complied with this request.[3] While sitting in the front seat of the patrol car, the officer noticed multiple behavioral indicators of nervousness, giving him reason to believe that Plaintiff may have been involved in criminal activity.[4] The officer then requested Plaintiff's consent to search the vehicle, and Plaintiff consented.[5] Plaintiff told the officer that he had $3,000 of cash in the vehicle.[6] During the search, the officers located approximately $122,000 in cash bundled together with rubber bands and contained in a trash bag in the back of the vehicle.[7]

A K-9 officer used a trained narcotics dog as part of the further investigation.[8] As the officer moved along the passenger-side rear door and fender area, the dog alerted for the presence of narcotics.[9] Plaintiff was ultimately charged with money laundering and convicted at trial. After the failure of the State to file an Appellee's brief, the Seventh Court of Appeals ruled in favor of Plaintiff on the criminal charge.

Plaintiff alleges that the traffic stop and subsequent search were "driven by revenue incentives and interdiction profiling" on behalf of the officers and the Sherriff's office.[10]

---

[1] *See* Plaintiff's Original Petition [Doc. 2] at p. 39.
[2] *See id.*
[3] *See id.*
[4] *See id.*
[5] *See* Plaintiff's Original Petition [Doc. 1] at ¶34.
[6] *See* Plaintiff's Original Petition [Doc. 2] at p. 39.
[7] *See id.*
[8] *See* Plaintiff's Original Petition [Doc. 1] at ¶76–81.
[9] *See id.*
[10] *See* Plaintiff's Original Petition [Doc. 1] at ¶91.

1

Additionally, Plaintiff alleges that Defendant McDonough, the District Attorney ("DA"), acted without probable cause and with malice in the criminal prosecution against Plaintiff.[11]

## II.
## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a plaintiff's complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal, a plaintiff must plead facts showing the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in a plaintiff's complaint as true; however, conclusory allegations, unwarranted factual inferences, legal conclusions, and formulaic recitations of a cause of action "will not do." *Id.* Furthermore, the facts pleaded must suggest liability; allegations that are merely consistent with wrongful conduct are insufficient. *Twombly*, 550 U.S. at 566-569.

## III.
## Arguments & Authorities

**A. Defendant Wheeler County, Defendant Reeves, and Defendant McDonough are not liable under § 1983 because there is no existing policy of the County or its Sheriff's Department that was the moving force behind Plaintiff's alleged constitutional violation.**

Municipal liability under § 1983 has three elements: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). Requiring satisfaction of these elements is

---

[11] *See id.* at ¶119–120.

"necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.*

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.,* 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski,* 237 F.3d at 579). Whatever its form, to yield municipal liability under § 1983, the policy must have been the "moving force" behind the plaintiff's constitutional violation. *Piotrowski,* 237 F. 3d at 580 (quoting *Monell,* 436 U.S. at 694). In other words, a plaintiff "must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation." *James,* 577 F.3d at 617 (quoting *Piotrowski,* 237 F.3d at 580).

Where an alleged policy is facially innocuous, establishing the requisite official knowledge necessitates that a plaintiff demonstrate that the policy was promulgated or "implemented with 'deliberate indifference' to the 'known or obvious consequences' that constitutional violations would result." *See Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)); *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir. 2003) (must show "facially innocuous" policy or custom was "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result") (internal quotations omitted)). The policies and/or customs in the current matter relate solely to enforcing existing laws.

Establishing deliberate indifference generally requires a "pattern of similar violations" arising from a policy "so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge*, 336 F.3d at 370 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th

Cir. 2001)). Mere negligence, even gross negligence, is not sufficient to establish deliberate indifference. *Brown v. Bryan Cty, OK*, 219 F.3d 450, 460–63 (5th Cir. 2000). The causal link "moving force" requirement and the degree of culpability "deliberate indifference" requirement must not be diluted, for "where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Alvarez*, F.3d at 390 (internal quotations omitted). Plaintiff does not attempt to assert a "pattern of similar violations."

At the motion-to-dismiss stage, a "plaintiff[ ] must allege facts that support the elements of the cause of action in order to make out a valid claim." *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (per curiam) (citation and quotation marks omitted); *see also Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 at 156-59 (2d ed.)).

Here, Plaintiff alleges that Defendant Wheeler County and the Defendants sued in their official capacity, are liable for the alleged unconstitutional misconduct of Defendants Pyle, Havens, and Cole due to an alleged official policy or practice "ratified" by Defendant Reeves, Wheeler County Sheriff. Backed by no evidence of any official Wheeler County policy, practice, custom, or procedure, Plaintiff makes the conclusory allegation and unsubstantiated logical leap that Wheeler County Sheriff's Office has a "policy, practice, and custom of encouraging or incentivizing deputies to seize currency for financial benefit of Wheeler County. . ., a longstanding custom of using pretextual traffic stops along Interstate-40 to target out-of-state motorists. . ., and a practice of treating [the] mere presence of currency . . . as sufficient justification to prolong

4

detentions."[12] Plaintiff offers no support for his conclusion that there is a longstanding custom related to currency based stops. Similarly, Plaintiff cannot point to any official policy, practice, or custom of Wheeler County to support a finding of liability under *Monell*.

Plaintiff also attempts to attach liability to Defendant Wheeler County based on the alleged wrongful prosecution of Plaintiff due to the actions of Defendant McDonough, the District Attorney, in pursuing a lawful prosecution of Plaintiff based on probable cause. Plaintiff makes the conclusory allegation, again backed by no evidence, that the "District Attorney's Office maintained policies, customs, and practices of initiating and continuing criminal prosecutions without probable cause by relying on materially incomplete, misleading, or fabricated investigative narratives. . ."[13] No such policy, custom or practice is set forth in the complaint. Plaintiff further alleges, in conclusory fashion, that that "[t]he District Attorney's Office further maintained a policy, custom, or practice of purporting to conduct good-faith evidentiary review and prosecutorial screening, when it in fact routinely conducted no meaningful investigation into the factual basis for arrests, seizures, or interdiction-based prosecutions." However, Plaintiff offers no examples, allegations or evidence to support either of these conclusory allegations, nor can Plaintiff point to any official policy, practice, or custom of Wheeler County to support a finding of liability under *Monell*.

Plaintiff asserts in a conclusory manner that these "practices were widespread, persistent, and well-established before and during Plaintiff's prosecution," again offering no factual example, allegation or evidence for such a statement. Plaintiff does not point to any previous instances where these alleged "unconstitutional policies, practices, and customs" of the Defendant Wheeler County, the District Attorney's Office, or the Wheeler County Sheriff's Office were implemented

---

[12] *See* Plaintiff's Original Petition [Doc. 1] at ¶156.
[13] *See id.* at ¶139.

or used.[14] Rather, Plaintiff merely makes the conclusory allegation, with no support, that any alleged unlawful conduct occurring in this case is part of a "pattern, practice and custom" of Wheeler County, Wheeler County Sheriff's Office and its Deputies. This is insufficient as a matter of law.

At the motion-to-dismiss stage, a "complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *See Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 875 (N.D. Tex. 2018). Plaintiff offers no explanation as to how any of these alleged unlawful actions were pursuant to a policy, practice, or custom of Wheeler County or the Defendants sued in their official capacity. Plaintiff only claims that the traffic stop, search, probable cause determination, and arrest involving Plaintiff was part of "an established pattern, practice, and custom of [Wheeler County Sheriff's Office]." As the Fifth Circuit has noted, isolated violations are not the persistent, often repeated, constant violations, that constitute custom, and a customary municipal policy cannot ordinarily be inferred from single constitutional violations. *See Raymond v. Ector County, Tex.*, 507 Fed. Appx. 347, 350 (5th Cir. 2013). "Establishing deliberate indifference generally requires a pattern of similar violations arising from a policy so clearly inadequate as to be obviously likely to result in a constitutional violation." *Covington v. City of Madisonville, Tex.*, 812 Fed. Appx. 219, 225 (5th Cir. 2020) (internal quotations omitted). Plaintiff's failure to set forth any type of factual persistent violations is fatal to his claims.

Plaintiff cannot show municipal liability under § 1983 related to a lawful to any official policy of Wheeler County, the Wheeler County Sheriff's Office, not the District Attorney's Office necessary to establish the policies were obviously likely to result in a constitutional violation.

---

[14] *See id.* at ¶154.

Accordingly, Defendants request that all of Plaintiff's claims made pursuant to § 1983 be dismissed in their entirety.

**B. Plaintiff's claims against Defendants should be dismissed based on the doctrines of governmental and qualified immunity.**

### 1. Official Capacity Claims

When a suit is brought against a governmental official in their official capacity, the suit is simply way of pleading a claim against the governmental entity for whom the government official is acting as an agent. *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ) (citing *Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 162 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). Thus, if the governmental entity is entitled to dismissal based on governmental immunity, so is the governmental official sued in their official, as opposed to individual capacity. *See id.* The sole claims against Defendants Reeves and McDonough are official capacity claims.

### 2. Individual Capacity Claims

Defendants Pyle, Havens, and Cole are sued in their individual capacity. Qualified immunity acts as an affirmative defense to claims brought against a government official, in their individual capacity, when that official exercises discretion, in good faith, while acting within the scope of their authority. *Wadewitz v. Montgomery*, 951 S.W.2d 646, 465 (Tex. 1997). In determining whether qualified immunity applies, the Court must look to "whether a reasonable official *could* have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994). Therefore, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *See id.* Thus, "if officers of

7

reasonable competence could disagree . . ., immunity should be recognized." *See id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official is entitled to immunity from suit arising out of the performance of their official duties that are (1) discretionary, (2) performed in good faith, and (3) and are done within the scope of their authority. *See Chambers*, 883 S.W.2d at 650 (citing *Baker v. Story*, 621 S.W.2d 639, 644 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.)). A discretionary act is any act that involves personal deliberation, decision, and judgment. To show that an officer did not act in good faith, "a plaintiff must do more than show that a reasonably prudent officer **could have** decided to act otherwise," but rather "the plaintiff must show that 'no reasonable person in the defendant's position **could have** thought the facts were such that they justified the defendant's acts.'" *See id.* (citing *Post v. City of Fort Lauderdale*, 7 F.2d 1230, 1234–35 (11th Cir. 1992)).

To defeat qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016). "If the defendant's actions violated a clearly established constitutional right," courts examine "whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). This inquiry focuses on the state of the law at the time of the incident and whether it provided a fair warning to the defendant that his conduct was unconstitutional. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014). It must be shown **beyond debate** that the officer's conduct violated a law that was clearly established at the time of the incident. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). The plaintiff bears the burden of finding "a case in which an officer acting under similar circumstances was held to [have

committed a constitutional violation] and explain why the case clearly proscribed the conduct of the officer." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).

Plaintiff alleges that Defendants Pyle and Havens violated Plaintiff's constitutional rights through an unreasonable seizure . . . not supported by probable cause," and by "effectuat[ing] a warrantless arrest without probable cause. . ."[15] When determining how and to what extent to investigate, including signing and submitting a probable cause affidavit, an officer must exercise his discretion. *Chambers*, 883 S.W.2d at 655; *see also Kmiec*, 902 S.W.2d at 121 (holding that a police officer was performing discretionary duties when he investigated the allegations and signed and submitted a probable cause affidavit for the plaintiff's arrest). Moreover, to survive dismissal, Plaintiff must show that "no reasonable person in the defendants position could have thought the facts were such that they justified [the] defendant's acts." *See id.*

Plaintiff offers no support for the concept that a reasonable officer in the same situation or circumstances would not have suspected criminal activity based on: (1) Plaintiff's nervous behavior, (2) the $122,000 cash bundled up in rolls in $20 bills, held together by rubber bands, and stored in a trash bag; and (3) found in the back seat of the vehicle traveling along Interstate-40, a known drug and drug proceeds corridor. *See U.S. v. $34,000 Currency*, 288 Fed. Appx. 139, 145 (5th Cir. 2008) (considering the manner in which the money is packaged in small increments, wrapped in rubber bands, as a factor in determining probable cause); *United States v. Reyes*, 963 F.3d 482, 488–89 (5th Cir. 2020) (considering the fact that the individual was traveling on a known drug-trafficking corridor, and the officer's training and experience in narcotics interdiction as a factor supporting the officer's reasonable suspicion); *Acosta v. State*, 429 S.W.3d 621, 626–627 (Tex. Crim. App. 2014) (considering the large amount of currency corresponding to felony

---

[15] *See* Plaintiff's Original Petition [Doc. 1] at ¶¶96, 106.

quantities of controlled substances as a factor to show a nexus between money and drug dealing). Plaintiff has not shown that it is clearly established that under similar facts, an officer was held to have committed a constitutional violation.

Furthermore, in addition to the above-named factors, a K-9 alerted to the exterior of Plaintiff's vehicle near the rear passenger-side door, which is indicative of potential drug activity. Defendants Pyle, Havens, and Cole used their discretion and judgment, based on the circumstances and their training as law enforcement officers, when investigating and subsequently arresting Plaintiff.[16] Plaintiff fails to address in his pleadings that a reasonable officer could not have come to the same conclusion under the same or similar circumstances. Moreover, Plaintiff's fails to allege any violation of a then-clearly established law. As such, Plaintiff's claims against Defendants Pyle, Havens, and Cole should be dismissed because Defendants acted in good faith in performing their discretionary duties within the scope of their authority and employment with the Wheeler County's Sheriff's Office, and are entitled to governmental immunity from liability.

**C. Plaintiff's claims for malicious prosecution should be dismissed because Defendant McDonough is entitled to absolute prosecutorial immunity for actions taken associated with the judicial process.**

Section 1983 creates a private right of action for violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Loupe v. O'Bannon*, 824 F.3d 534, 537 (5th Cir. 2016) (quoting 42 U.S.C. § 1983). However, the Supreme Court has made extremely clear that ". . .the statute was not meant to reflect a radical departure from ordinary tort law and the common-law immunities applicable in tort suits." *See id.* (quoting *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012)). In determining who is entitled to absolute immunity from actions under

---

[16] Defendant Cole was the K-9 handler relevant to the facts of this case. His sole role was handling the K-9 who conducted the sniff search of Plaintiff's vehicle and subsequently testifying regarding the sniff search conducted by the K-9 on the night of Plaintiff's arrest.

§ 1983, the Court looks to the "common law to identify those governmental functions that were historically viewed as so important and vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed to ensure that they are performed 'with independence and without fear of consequences.'" *See id.* at 538 (quoting *Rehberg*, 566 U.S. at 363–64).

The Supreme Court has identified several functions that are absolutely immune from liability under § 1983, including any actions taken by prosecutors in performing their role as advocates in the judicial process. *See id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)); *see also Burns v. Reed*, 500 U.S. 478, 489–90 (1991) (recognizing prosecutorial immunity from damages for "making false or defamatory statements in judicial proceedings. . .and also for eliciting false and defamatory testimony from witnesses") (citation omitted); *Clawson v. Wharton Cnty.*, 941 S.W.2d 267, 272 (Tex. App.—Corpus Christi 1996, pet. denied) (holding that a prosecutor accused of accepting bribes still enjoys absolute immunity because "[a]bsolute immunity will shelter a prosecutor even should he act maliciously, wantonly, or negligently") (citation omitted).

To be entitled to absolute immunity from liability, a prosecutor's actions must be "intimately associated with the judicial phase of the criminal process." *Id.* (citing *Imbler*, 424 U.S. at 430). Such immunity is intended to shield "the prosecutor from harassing litigation that would divert his time and attention from his official duties," and "enable him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *See id.* (citing *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997)). When deciding whether absolute immunity applies, the Court must look "to the nature of the function performed, not the identity of the actor who performed it." *See id.* at 539 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).

11

Accordingly, under this approach, "[a] prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as 'advocate for the state' in the courts, or when her conduct is 'intimately associated with the judicial phase of the criminal process." *See id.* (quoting *Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997), *abrogated on other grounds as recognized by Spivey v. Robertson*, 197 F.3d 772, 775–76 (5th Cir. 1999)).

Here, Plaintiff's claim for malicious prosecution against Defendant McDonough should be dismissed. Defendant McDonough, in his official capacity as District Attorney, is entitled to absolute immunity for actions taken to initiate and prosecute a criminal prosecution as part of the judicial process. Plaintiff's Complaint is void of any reasonable allegation specifically against Defendant McDonough to support a claim for malicious prosecution.[17] District Attorney McDonough received the evidence, accepted the charge, received a returned indictment from the grand jury, and successfully prosecuted the matter to conviction in a bench trial before Judge Emmert. The decision regarding whether or not to prosecute is intimately associated with the judicial phase of the criminal process and entitles a prosecutor making those decisions to ***absolute immunity*** from civil liability for such decisions. Accordingly, the claim for malicious prosecution against Defendant McDonough should be dismissed.

**D. Plaintiff's claim for malicious prosecution should be dismissed because Defendants Reeves, Pyle, Havens, and Cole's actions were based on probable cause.**

Under Texas Law, a claim for malicious prosecution is proper "where a criminal proceeding is initiated or procured without probable cause and with malice."[18] In the context of a malicious prosecution claim, malice is defined as "conduct motivated by ill will, wrongful or evil

---

[17] *See* Plaintiff's Original Petition [Doc. 1] at ¶¶109–131.
[18] *See id.* at ¶120.

motive, or undertaken in reckless disregard of the rights of another."[19] Plaintiff never alleges any conduct that would rise to the level of malice.

In order to plead a successful malicious prosecution claim brought under § 1983, a plaintiff must prove the following: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong v. Ashley*, 60 F.5th 262, 279 (5th Cir. 2023) (citing *Gordy v. Burns*, 294 F.3d 722, 725 (5th Cir. 2002). Additionally, the plaintiff must also prove an unlawful seizure under the Fourth Amendment, as this is a threshold element of a malicious prosecution. *See id.* (citing *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022)). Therefore, "because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause . . . then a malicious prosecution claim cannot move forward." *Id.* at n. 15 (internal citation omitted).

In the context of a malicious prosecution claim, "probable cause means 'the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Gordy*, 294 F.3d at 727–28 (quoting *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). When a malicious prosecution claim is brought against a law enforcement officer, as opposed to the prosecuting attorney, it must be shown that the officer provided false or misleading information to the prosecuting attorney or grand jury. *See id.* (citing *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992)). Therefore, stated another way, the threshold question in a malicious prosecution claim is "whether a reasonable officer—at the time when criminal proceedings were

---

[19] *See id.* at ¶128.

instituted and based solely on the facts as the officers honestly and reasonably believed them to be—would believe to a "fair probability" that a crime had been committed." *Id.* (citing *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000)). No such credible allegation is made in Plaintiff's complaint. The probable cause affidavit was not misleading.

Moreover, to succeed in a claim for malicious prosecution, a plaintiff must show that the defendant initiated or procured the prosecution against Plaintiff. *See Cuba v. Pylant*, 814 F.3d 701, 712 (5th Cir. 2016) (citing *Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006)). "A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities." *Browning-Ferris Indus. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994). As a general rule, "a person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person. . ." *Keenan v. Robin*, 709 S.W.3d 595, 603 (Tex. 2024) (quoting *Browning*, 881 S.W.2d 288, 292 (Tex. 1994)).

Here, Plaintiff alleges that Defendants Pyle, Havens, and Cole initiated and procured the criminal prosecution against Plaintiff by "arresting Plaintiff without probable cause; swearing to a Probable Cause Affidavit that omitted material exculpatory information; asserting a nonexistent criminal nexus between Plaintiff and narcotics activity; providing incomplete, misleading, or false statements to prosecutors; and testifying in a manner calculated to influence and sustain the prosecution."[20]

At the time of Plaintiff's arrest, Officers Pyle and Havens observed nervousness from Plaintiff that was indicative of potential criminal activity.[21] Further, Officer Pyle asked Plaintiff whether there were any drugs or sums or money greater than $10,000 in his vehicle.[22] Plaintiff

---

[20] *See* Plaintiff's Original Petition [Doc. 1] at ¶121.
[21] *See* Plaintiff's Original Petition [Doc. 2] at p. 39.
[22] *See id.*

answered negatively to both questions.[23] After obtaining Plaintiff's consent to search the vehicle, Officers Pyle and Havens discovered a trash bag containing several bundles of cash, primarily in $20 increments, held together with rubber bands, which Officer Pyle indicated was common with proceeds from criminal activity.[24] After the money was discovered, Plaintiff told the officers that he had no idea where the money came from and had never seen it before.[25] Moreover, after conducting the search of Plaintiff's vehicle, the K-9 conducted a secondary search and alerted to the outside of the vehicle near the passenger-side rear door and fender area, which indicates the presence of illegal drugs.[26] Based on these facts uncovered in the investigation, all individual Defendants were justified in forwarded their investigative findings to the District Attorney.

Based on the totality of the circumstances, a reasonable officer in the same position as Officers Pyle and Havens could reasonably conclude that the crime of money laundering had been committed based on the facts as they uncovered following the lawful stop. The facts support a finding of probable cause at the time of Plaintiff's arrest and prosecution. As such, Plaintiff's malicious prosecution must be dismissed.

Moreover, Plaintiff alleges that Defendants Pyle, Havens, and Cole initiated and procured the criminal prosecution against Plaintiff by "arresting Plaintiff without probable cause; swearing to a Probable Cause Affidavit that omitted material exculpatory information; asserting a nonexistent criminal nexus between Plaintiff and narcotics activity; providing incomplete, misleading, or false statements to prosecutors; and testifying in a manner calculated to influence and sustain the prosecution."[27] Even taken as true, none of these allegations amount to initiated or

---

[23] *See id.*
[24] *See id.*
[25] *See id.*
[26] *See* Plaintiff's Original Petition [Doc. 1] at ¶119.
[27] *See id.* at ¶121.

procuring the prosecution of Plaintiff by Defendants Pyle, Havens, or Cole. Defendant McDonough, the District Attorney, is the only person with **_legal authority_** to "initiat[e] or procur[e]" a prosecution against any individual, including Plaintiff. *See Keenan*, 709 S.W.3d at 603 (citing *Browning*, 881 S.W.2d at 292) (noting that a person cannot be said to procure" a criminal prosecution if the final decision is left to another individual). Plaintiff's attempt to attach liability to any individual law enforcement officers as a result of Plaintiff's lawful prosecution is unsubstantiated and unsupported by Texas law. As such, these claims should be dismissed.

## IV.
## Prayer

For these reasons, Defendants pray that the Court grant their motion under 12(b)(6) and dismiss Plaintiff's Original Complaint. Defendants pray for such other and further relief to which they may show themselves entitled.

Respectfully submitted,

/s/ Slater C. Elza
Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
P.O. Box 9158
Amarillo, Texas  79105
Tel:  (806) 376-5613
Fax:  (806) 379-0316

ATTORNEY FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 9th day of March, 2026.

*/s/ Slater C. Elza*
Slater C. Elza

17